IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN A. McLEOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0247 (JDB) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Before joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate

General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of

Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From

October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and

routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law

in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 233

employees who staff a total of ten (10) units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial

decisions and other Presidential and Congressional directives. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware

of the treatment which has been afforded the FOIPA request of Steven A. McLeod.

(4)    The purpose of this declaration is to provide the Court and plaintiff with an

explanation of the search for records responsive to plaintiff's request to FBIHQ that resulted in

no records being located.    This declaration also provides a justification for the withholding of

certain information from a release made to plaintiff by FBIHQ in accordance with Vaughn v.

Rosen, 484 F.2d 820 (D.C. Cir. 1973), pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a

(j)(2) and FOIA Exemptions 6 and 7(C), U.S.C. § 552  (b)(6) and (b)(7)(C).[1]

## CORRESPONDENCE RELATED TO PLAINTIFF'S REQUEST

(5)    By letter dated August 7, 2005, plaintiff submitted a FOIPA request to the FBI's

Tampa Field Office ("TPFO") for "any information currently in your (FBI) possession of any

---

[1]See ¶¶ 15 and 17, infra.

evidence of criminal misconduct, exculpatory evidence or evidence planting or tampering by any

persons involved in the case of the State of Florida v. Steven A. McLeod, case no. 00-15913."[2]

(See Exhibit A.)

(6)    By letter dated August 19, 2005, FBIHQ advised plaintiff that his request did not

contain sufficient information to conduct an accurate search of the Central Records System

("CRS") at FBIHQ.  Plaintiff was advised to provide the necessary information before a search

for responsive records could be made.  Plaintiff's completed information form, which was

returned to FBIHQ, was signed and dated August 29, 2005.  (See Exhibit B.)[3]

(7)    By letter dated September 20, 2005, FBIHQ advised plaintiff that a search of

the automated indices to the CRS at FBIHQ located no responsive records for his request, FOIPA

number 1029110.  Plaintiff was also advised that he could appeal the FBI's "no record" response

by writing to the Office of Information and Privacy ("OIP") at the United States Department of

Justice ("DOJ") within sixty days.  (See Exhibit C.)

(8)    By letter dated October 3, 2005, plaintiff appealed the FBI's "no record" response

to OIP stating, "this information exists and I am entitled to it."  (See Exhibit D.)

---

[2]  Plaintiff sent his FOIPA request to the "FBI Public Corruption Squad" at TPFO and it was subsequently forwarded to FBIHQ for handling.

[3] Plaintiff also included his FBI identification number on the form.  If plaintiff's intent is to obtain a copy of an FBI identification record or "rap sheet," he may do so by sending a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia  26306.  Each request must include proof of identity which shall consist of name, date and place of birth and a set of rolled-ink fingerprint impressions placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus payment of $18.00 in the form of a certified check or money order, payable to the Treasury of the United States.

**EXPLANATION OF THE CENTRAL RECORDS SYSTEM**

(9)    The Central Records System ("CRS"), which is utilized by the FBI to conduct

searches in response to FOIA and Privacy Act requests, enables it to maintain all information

which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.

The records consist of administrative, applicant, criminal, personnel, and other files compiled for

law enforcement purposes. This system consists of a numerical sequence of files broken down

according to subject matter. The subject matter of a file may relate to an individual,

organization, company, publication, activity or foreign intelligence matter. Certain records in the

CRS are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained

in those field offices.

(10)    Access to the CRS is obtained through the General Indices, which are arranged in

alphabetical order. The General Indices consist of index cards on various subject matters that are

searched either manually or through the automated indices. The entries in the General Indices

fall into two categories:

> (a)  A "main" entry - A "main" entry carries the name corresponding with a
> subject of a file contained in the CRS.
>
> (b)  A "reference" entry - "Reference" entries, sometimes called "cross-
> references," are generally only a mere mention or reference to an individual,
> organization, etc., contained in a document located in another "main" file.

(11)    Access to the CRS files at FBI field offices is also obtained through the General

Indices (automated and manual), which are likewise arranged in alphabetical order, and consist

of an index on various subjects, including the names of individuals and organizations. Searches

made in the General Indices to locate records concerning a particular subject, such as Steven

-4-

Alan McLeod, are made by searching the subject requested in the index.  FBI field offices have

automated indexing functions.

(12)     On October 16, 1995, the Automated Case Support ("ACS") was implemented for

all Field Divisions, Legal Attaches ("Legats") and FBIHQ.  Over 105 million records were

converted from automated systems previously utilized by the FBI.  ACS consists of three

integrated, yet separately functional, automated applications that support case management

functions for all FBI investigative and administrative cases, which are:

(a)   Investigative Case Management ("ICM") - ICM provides the ability to

open, assign, and close investigative and administrative cases as well as set, assign and track

leads.  The Office of Origin ("OO"), which sets leads for itself and other divisions, as needed,

opens a case.  The field offices that receive leads from the OO are referred to as Lead Offices

("LOs"), formerly known as Auxiliary Offices.  When a case is opened, it is assigned a Universal

Case File Number ("UCFN"), which is utilized by FBIHQ and all offices that are conducting or

assisting in the investigation.  Using a fictitious file number "12-WF-1234" as an example, an

explanation of the UCFN is set forth: "12" indicates the classification for the specific type of

investigation.  "WF" is the abbreviated form used for the Office of Origin of the investigation,

which in this case is the FBI's Washington Metropolitan Field Office, and "1234" indicates the

individual case file number for the particular classification of investigation.

(b)   Electronic Case File ("ECF") - ECF serves as the central electronic repository

for the FBI's official text-based documents.  ECF supports the universal serial concept, in that

only the creator of a document serializes it into a file, providing single source entry of serials into

the computerized ECF system.  All <u>original</u> serials are maintained in the OO case file.

(c)   Universal Index ("UNI") - UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases.  Only the OO is required to index; however, the LOs may index additional information as needed. UNI, a 93.6 million record index, provides functions to index names to cases and to search names and cases for the FBI's investigative and administrative cases.  Names of individuals or organizations are recorded with identifying information, such as sex, race, event date, date or place of birth, locality, Social Security number, or address.

(13)   The decision to index names other than subjects, suspects and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the supervisory SA ("SSA") in the field office conducting the investigation and the SSA at FBIHQ.  The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval.  Without a "key" (index) to this enormous mass of information, information essential to ongoing investigations could not be readily retrieved.  The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal statutes.  Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, <u>i.e.</u>, Steven Alan McLeod.

-6-

## SEARCH FOR RESPONSIVE RECORDS

(14)    In response to plaintiff's request, FBIHQ searched the CRS using plaintiff's name

in order to locate any main investigatory files maintained at HQ.  A search of the CRS by using

the name "Steven Alan McLeod" would cover a six-way phonetic breakdown of the name

including any variations of the first and/or last name that sounds like or is spelled differently than

the name.  For example, this search would locate records using the phonetic sounds of each last

and first name relating to the following names: "McLeod, Steven A.," "McLeod, Steven," and

"McLeod, Steven Alan."  FBIHQ also used plaintiff's date of birth and Social Security number to

facilitate the identification of responsive records.  This search failed to locate any main

investigatory files responsive to plaintiff's request.

(15)    Upon receipt of the complaint in this litigation, the FBI noted that the original

request letter was addressed to TPFO, not FBIHQ.  Therefore, it was determined that the FBI

should search the TPFO indices of the CRS.  Second, the FBI expanded the search to include

cross-references responsive to plaintiff's request.  This second search failed to locate any

pertinent main files or cross-references at TPFO, regarding State of Florida v. Steven A.

McLeod, Case No. 00-15913.[4]  Also, the FBI Jacksonville Field Office (JKFO) searched the

JKFO indices because Mr. McLeod is, and has been incarcerated at a facility within the

geographic boundaries of that Field Office.  That search did not reveal any responsive

---

[4] In the absence of a specific request for a search of cross-references at the administrative
level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA
requests.  In this case, at the administrative level, plaintiff did not specifically request that a
search be conducted for cross-references.

documents. TPFO did locate three letters addressed to the FBI that Mr. McLeod had authored

requesting FBI investigative assistance in matters unrelated to his FOIA request. (Attached at

Exhibit E.) A copy of these letters with their attachments was mailed to Mr. McLeod on

March 31, 2006. In response to receipt of these letters Mr. McLeod wrote a letter stating that he

had given an interview to FBI agents on September 21, 2004 and claimed that documentation of

that interview related to his original FOIA request. (Attached at Exhibit F.) Located at TPFO

was a report of an interview of Mr. McLeod conducted by the FBI on September 21, 2004.[5] The

interview was conducted after Mr. McLeod alleged he had information about judicial corruption.

The only corruption information relayed by Mr. McLeod was allegations that he personally had

delivered cash bribes from defense attorneys to a judge, and that he had witnessed a bribe

delivered via a defense attorney to a male prosecutor in exchange for Mr. McLeod's friend to

receive a more lenient sentence. The interview summary did not contain any "evidence of

criminal misconduct, exculpatory evidence or evidence of planting or tampering by any persons

involved in the case of State of Florida v. Steven A. McLeod, Case No. 00-15913." None of the

named or described participants corresponded to those named or described in Plaintiff's

Complaint nor in Exhibits 8 and 13 attached to his complaints.

(16)    In accordance with the DOJ FOIA regulations, 28 C.F.R. Section 16.3(b), FOIA

requesters are put on constructive notice that it is incumbent upon them to describe the records

sought in enough detail to enable Department personnel to locate them with a reasonable

---

[5] The interview summary spelled the subject's name slightly differently than Steven A. McLeod, but other personal identifiers matched.

amount of effort. In accordance with the DOJ FOIA regulations, 28 C.F.R. Sections 16.3(a) and

16.41(a), FOIA requesters are placed on constructive notice that it is incumbent upon them to

direct their requests to those FBI field offices most likely to have records responsive to their

requests. In this instance, even though FBIHQ, TPFO and JKFO do not have any records

responsive to plaintiff's request, other FBI field offices may have such records. Pursuant to 28

C.F.R. Sections 16.3(a) and 16.41(a), plaintiff must direct his FOIA request to those FBI field

offices most likely to possess responsive records.

(17)    Although the FBI does not consider the September 21, 2004, interview of plaintiff

responsive to his original FOIPA request, based on his April 4, 2006, letter to Ann Shannon of

the FBI's JKFO, the interview was processed and released to him by FBI letter dated May 5,

2006, with redactions made pursuant to exemption (j)(2) of the Privacy Act and (b)(6) and

(b)(7)(C) of the FOIA. (See Exhibit G.)

### EXPLANATION OF FORMAT USED FOR THE
### JUSTIFICATION OF DELETED MATERIAL

(18)    All information was processed to achieve maximum disclosure consistent with the

access provisions of the FOIA. Every effort was made to provide plaintiff with all material in the

public domain and with all reasonably segregable portions of releasable material. To further

describe the information withheld could identify the material sought to be protected. Copies of

the vaughned pages are attached hereto as Exhibit G. Each page of Exhibit G is consecutively

numbered " McLeod-1 through McLeod-4 in the lower right margin. The exemptions asserted

by the FBI as grounds for non-disclosure of portions of documents, are Privacy Act Exemption

(j)(2) and FOIA Exemptions 6 and 7(C).

(19)   Copies of the pages contain, on their face, coded categories of exemptions which

detail the nature of the information withheld pursuant to the provisions of the FOIA. To further

describe the information withheld in more detail could identify the very material that the FBI is

protecting. No reasonably segregable, nonexempt portions were withheld from plaintiff. The

coded categories are provided to aid the Court's review of the FBI's explanations of FOIA

exemptions used to withhold the protected material. Accordingly, a review of this information

will reveal that all material withheld is exempt from disclosure pursuant to a FOIA exemption or

it is so intertwined with protected material that segregation is not possible without revealing the

underlying protected material.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(20)   The coded format is used in this case to assist the Court and plaintiff in reviewing

the information withheld within the context of the material itself. Each instance of information

withheld pursuant to the FOIA on the attached document is accompanied by a coded designation

that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on the

document, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning

"Unwarranted Invasion of Privacy." The numerical designation "1" following the "(b)(7)(C)"

narrows the main category to the more specific subcategory, "Names of FBI Agents." Listed

below are the categories used to explain the FOIA exemptions asserted to withhold this material:

## SUMMARY OF JUSTIFICATION CATEGORIES

| **Category (b)(6)** | **Clearly Unwarranted Invasion of Personal Privacy** |
|---|---|
| (b)(6)-1 | Names of FBI Special Agents (Cited in conjunction with (b)(7)(C)-1) |
| (b)(6)-2 | Names and/or Identifying Information on Third Parties Merely Mentioned (Cited in conjunction with (b)(7)(C)-2) |
| (b)(6)-3 | Names and/or Identifying Information on Third Parties of Possible Investigative Interest (Cited in conjunction with (b)(7)(C)-3) |
| (b)(6)-4 | Names of Non-FBI Law Enforcement Personnel (Cited in conjunction with (b)(7)(C)-4) |

| **Category (b)(7)(C)** | **Unwarranted Invasion of Personal Privacy** |
|---|---|
| (b)(7)(C)-1 | Names of FBI Special Agents. (Cited in conjunction with (b)(6)-1) |
| (b)(7)(C)-2 | Names and/or Identifying Information on Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-2) |
| (b)(7)(C)-3 | Names and/or Identifying Information on Third Parties of Possible Investigative Interest (Cited in conjunction with (b)(6)-3) |
| (b)(7)(C)-4 | Names of Non-FBI Law Enforcement Personnel (Cited in conjunction with (b)(6)-4) |

## JUSTIFICATION FOR REDACTIONS

(21)    Paragraphs 22-42 infra, explain the FBI's rationale for withholding each particular category of information under the specific exemption categories described above.

## PRIVACY ACT EXEMPTION (j)(2)

(22)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal

-11-

function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."

(23)     The information provided by plaintiff during a September 21, 2004, interview was recorded as a result of plaintiff alleging to have knowledge of "22 cases since 1995 that were fixed involving 4 judges, 6 prosecutors and about the same number of attorneys" at the same time that the TPFO was conducting an FBI investigation into law enforcement corruption in the Hillsborough County Courthouse at Tampa, Florida. Accordingly, these files are exempt from disclosure pursuant to 5 U.S.C. § 552a (j)(2) of the Privacy Act, in conjunction with 28 C.F.R. § 16.96. Although access to the record was denied under the Privacy Act, the document responsive to plaintiff's request was processed under the access provisions of the FOIA to achieve maximum disclosure.

### EXEMPTION (b)(6)
### CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(24)     5 U.S.C. § 552 (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

(25)     When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in the documents against any public interest in disclosure. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying information appears in the document at issue. The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the

general public about the FBI's performance of its mission to enforce federal criminal and

national security statutes, and/or how the FBI actually conducts its internal operations and

investigations.  As explained below, there is no legitimate public interest in the information that

has been withheld pursuant to Exemption (b)(6).

### (b)(6)-1        Names of FBI Special Agents

(26)    Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1

to protect the names of the two FBI Special Agents (SAs) from the JKFO who were responsible

for interviewing plaintiff.  FBI SAs from TPFO  who were responsible for conducting,

supervising, and/or maintaining the investigation into corruption in Hillsborough County

requested  the interview of plaintiff.  The responsibilities also included interviewing cooperating

witnesses and sources, and reviewing materials compiled as a result of the investigation of

corruption in Hillsborough County.  Assignments of SAs to any particular investigation are not

by choice.  Publicity (adverse or otherwise) regarding any particular investigation to which they

have been assigned may seriously prejudice their effectiveness in conducting other

investigations.  The privacy consideration is also to protect FBI SAs  as individuals from

unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or

not they are currently employed by the FBI.  FBI SAs conduct official inquiries into various

criminal and national security violation cases.  SAs come into contact with all strata of society,

conducting searches and making arrests, both of which result in reasonable but nonetheless

serious disturbances to people and their lives.  It is possible for an individual targeted by such

law enforcement actions to carry a grudge which may last for years.  These individuals  may seek

revenge on the FBI SAs involved in a particular investigation. The publicity associated with the release of the identity of an FBI SA in connection with a particular investigation could trigger hostility toward that particular individual. Accordingly, these individuals maintain substantial privacy interests in not having their identities disclosed. In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these SAs because this information does not shed light on the operations and activities of the FBI. Any such disclosure would constitute a clearly unwarranted invasion of their personal privacy.

(27)     In balancing the substantial privacy interest of these individuals against no legitimate public interest in its disclosure, the FBI has determined that this information regarding FBI SAs  has been properly withheld pursuant to Exemption 6. Exemption (b)(6)-1 in conjunction with (b)(7)(C)-1 is invoked on the following page: McLeod 1.

### (b)(6)-2      Names and/or Identifying Information of Third Parties Merely Mentioned

(28)     Exemption (b)(6)-2  has been asserted in conjunction with Exemption (b)(7)(C)-2 to withhold the names and identifying information of third parties merely mentioned in the interview of plaintiff. Identifying information includes the individuals' relationship to plaintiff, as well allegations that plaintiff made against these individuals who were not of investigative interest to the FBI. These third parties maintain legitimate privacy interest in not having this information disclosed. If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were possibly connected with the FBI's investigation of corruption in Hillsborough County. Disclosure of these third parties' names and

-14-

identifying information in connection with the FBI's investigation could carry an extremely

negative connotation. Disclosure of their identities could subject these individuals to possible

harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the

FBI determined that these third parties maintained a substantial privacy interest in not having

information about them disclosed. In considering the public interest in this information, the FBI

determined that there is no public interest to be served by releasing the identities of these third

parties merely mentioned because this information would not shed light on the operations and

activities of the FBI. Any such disclosure would constitute a clearly unwarranted invasion of

their personal privacy.

(29)    In balancing the substantial privacy interest that these individuals have in this

information against no legitimate public interest in its disclosure, the FBI has determined that

this information regarding third parties merely mentioned has been properly withheld pursuant to

Exemption 6. Exemption (b)(6)-2 in conjunction with Exemption (b)(7)(C)-2 is invoked on the

following pages: McLeod 1, 2 and 3.

### (b)(6)-3    Names and/or Identifying Information on Third Parties of Possible Investigative Interest

(30)    Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3

to withhold the names and identifying information of third parties who were of possible

investigative interest to the FBI and/or local law enforcement. During the course of the FBI's

interview of plaintiff he made criminal allegations about associates who may or may not have

been investigated by the FBI and/or local law enforcement. Consequently, due to the criminal

allegations against these individuals, disclosure of their identities could subject them to

-15-

harassment, embarrassment and could cause undue public attention. Furthermore, disclosure of their identities could threaten their physical safety. Accordingly, the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed. In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these third parties of possible investigative interest by the FBI and/or local law enforcement because this information would not shed light on the operations and activities of the FBI. Any such disclosure would constitute a clearly unwarranted invasion of their personal privacy.

(31)    In balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI has determined that this information regarding these third parties has been properly withheld pursuant to Exemption 6. Exemption (b)(6)-3 in conjunction with Exemption (b)(7)(C)-3 is invoked on the following pages: McLeod 1, 2 and 3.

### (b)(6)-4    Names of Non-FBI Law Enforcement Personnel

(32)    Exemption (b)(6)-4 has been asserted in conjunction with (b)(7)(C)-4 to withhold the names of two non-FBI law enforcement personnel who plaintiff alleges in the interview were Tampa Police Department officers who seized his computer and did forensic analysis of the computer. Disclosure of these two individuals' identities could jeopardize their effectiveness in the performance of their official duties. There is no public interest to be served by releasing this information. Exemption (b)(6)-4 in conjunction with (b)(7)(C)-4 is invoked on the following page: McLeod 4.

-16-

## EXEMPTION 7
## EXEMPTION 7 THRESHOLD

(33)    Exemption 7 of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.

See 5 U.S.C. § 552 (b)(7).  In this case, the harm that could reasonably be expected to result from

disclosure concerns  invasion of personal privacy.

(34)    Before an agency can invoke any of the harms enumerated in Exemption 7, it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency.   The information provided by plaintiff during a

September 21, 2004, interview was recorded as a result of plaintiff alleging to have knowledge of

"22 cases since 1995 that were fixed involving 4 judges, 6 prosecutors and about the same

number of attorneys"  at the same time that the TPFO was conducting an FBI investigation into

law enforcement corruption in the Hillsborough County Courthouse at Tampa, Florida.

Accordingly, the information readily meets the threshold requirement of Exemption 7.  The

remaining inquiry is whether its disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy.

### EXEMPTION (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(35)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the
extent that the production of such law enforcement records or information . . .
could reasonably be expected to constitute an unwarranted invasion of personal
privacy.

(36)    When withholding information pursuant to this exemption, the FBI is required to

balance the privacy interests of the individuals mentioned in the documents against any public

interest in disclosure.  In asserting this exemption, each piece of information was examined to

determine the degree and nature of the privacy interest of each individual whose name and/or

identifying information appears in the document at issue.  The public interest in disclosure of the

information is determined by whether the information in question would inform plaintiff or the

general public about the FBI's performance of its mission to enforce federal criminal and

national security statutes, and/or how the FBI actually conducts its internal operations and

investigations.  As explained below, there is no legitimate public interest in the information that

has been withheld pursuant to Exemption (b)(7)(C).

#### (b)(7)(C)-1    Names of FBI Special Agents

(37)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption

(b)(6)-1 to protect the names of the two FBI Special Agents (SAs) from the JKFO who were

responsible for interviewing plaintiff.  FBI SAs from TPFO  who were responsible for

conducting, supervising, and/or maintaining the investigation into corruption in Hillsborough

County requested the interview of plaintiff.  The responsibilities also included interviewing

-18-

cooperating witnesses and sources, and reviewing materials compiled as a result of the

investigation of corruption in Hillsborough County. Assignments of SAs to any particular

investigation are not by choice. Publicity (adverse or otherwise) regarding any particular

investigation to which they have been assigned may seriously prejudice their effectiveness in

conducting other investigations. The privacy consideration is also to protect FBI SAs as

individuals from unnecessary, unofficial questioning as to the conduct of this or other

investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official

inquiries into various criminal and national security violation cases. SAs come into contact with

all strata of society, conducting searches and making arrests, both of which result in reasonable

but nonetheless serious disturbances to people and their lives. It is possible for an individual

targeted by such law enforcement actions to carry a grudge which may last for years. These

individuals may seek revenge on the FBI SAs involved in a particular investigation. The

publicity associated with the release of the identity of an FBI SA in connection with a particular

investigation could trigger hostility toward that particular individual. Accordingly, these

individuals maintain substantial privacy interests in not having their identities disclosed. In

considering the public interest in this information, the FBI determined that there is no public

interest to be served by releasing the identities of these SAs because this information does not

shed light on the operations and activities of the FBI. Any such disclosure could constitute an

unwarranted invasion of their personal privacy.

     (38)    In balancing the substantial privacy interest of these individuals against no

legitimate public interest in its disclosure, the FBI has determined that this information regarding

FBI SAs  has been properly withheld pursuant to Exemption (b)(7)(C).  Exemption (b)(7)(C)-1 in

conjunction with Exemption (b)(6)-1 is invoked on the following pages:  McLeod 1.

### (b)(7)(C)-2    Names and/or Identifying Information of Third Parties Merely Mentioned

(39)    Exemption (b)(7)(C)-2  has been asserted in conjunction with Exemption (b)(6)-2

to withhold the names and identifying information of third parties merely mentioned in the

interview of plaintiff  Identifying information includes the individuals' relationship to plaintiff,

as well allegations that plaintiff made against these individuals who were not of investigative

interest to the FBI.  These third parties maintain legitimate privacy interest in not having this

information disclosed.  If the FBI disclosed their names and other personal information, the

disclosure would reveal that these third parties were possibly connected with the FBI's

investigation of corruption in Hillsborough County.  Disclosure of these third parties' names and

identifying information in connection with the FBI's investigation could carry an extremely

negative connotation.  Disclosure of their identities could subject these individuals to possible

harassment or criticism and focus derogatory inferences and suspicion on them.  Accordingly, the

FBI determined that these third parties maintained a substantial privacy interest in not having

information about them disclosed.  In considering the public interest in this information, the FBI

determined that there is no public interest to be served by releasing the identities of these third

parties merely mentioned because this information would not shed light on the operations and

activities of the FBI.  Any such disclosure could constitute an unwarranted invasion of their

personal privacy.

(40)    In balancing the substantial privacy interest that these individuals have in this

information against no legitimate public interest in its disclosure, the FBI therefore has

determined that this information regarding third parties merely mentioned has been properly

withheld pursuant to Exemption (b)(7)(C).  Exemption (b)(7)(C)-3  in conjunction with

Exemption (b)(6)-3 is invoked on the following pages:   McLeod 1, 2 and 3.

### (b)(7)(C)-3    Names and/or Identifying Information of Third Parties of Possible Investigative Interest

(41)    Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemption

(b)(7)(C)-3 to withhold the names and identifying information of third parties who were of

possible investigative interest to the FBI and/or local law enforcement.   During the course of the

FBI's interview of  plaintiff he made criminal allegations about associates who may or may not

have been investigated by the FBI and/or local law enforcement.  Consequently, due to criminal

allegations against these individuals, disclosure of their identities could subject them to

harassment, embarrassment and could cause undue public attention.  Furthermore, disclosure of

their identities could threaten their physical safety.  Accordingly, the FBI has determined that

these individuals maintain a substantial privacy interest in not having their identities disclosed.

In considering the public interest in this information, the FBI determined that there is no public

interest to be served by releasing the identities of these third parties of possible investigative

interest by the FBI and/or local law enforcement because this information would not shed light

on the operations and activities of the FBI.  Any such disclosure could constitute an unwarranted

invasion of their personal privacy.

(42)    In balancing the substantial privacy interest that these individuals have in this

information against no legitimate public interest in its disclosure, the FBI has determined that

this information regarding these third parties has been properly withheld pursuant to Exemption

(b)(7)(C).  Exemption (b)(7)(C)-3 in conjunction with Exemption (b)(6)-3 is invoked on the

following pages: McLeod 1, 2 and 3.

### (b)(7)(C)-4    Names and/or identifying information of Non FBI Law Enforcement Personnel

(43)    Exemption (b)(7)(C)-4 has been asserted in conjunction with (b)(6)-4 to withhold

the names of two non-FBI law enforcement personnel who plaintiff alleges in the interview were

Tampa Police Department officers who seized his computer and did forensic analysis of the

computer.  Disclosure of these two individuals' identities could jeopardize their effectiveness in

the performance of their official duties.  There is no public interest to be served by releasing this

information.  Exemption (b)(7)(C)-4 in conjunction with (b)(6)-4 is invoked on the following

page: McLeod 4.

### CONCLUSION

(44)    Plaintiff has been provided one document that he referenced in an April 4, 2006,

letter to the JKFO.  Although the FBI does not consider the document responsive to his FOIPA

request, it has been provided to him in redacted form.  The document was individually reviewed

for segregability.  All segregable information has been released to plaintiff, and no reasonably

segregable portion of the withheld material can be released.  As demonstrated above, the only

information withheld by the FBI consists of information that would infringe upon the personal

privacy of third party individuals.  This information cannot be further segregated without

-22-

revealing the protected information itself.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing

is true and correct, and that Exhibits A through G attached hereto are true and correct copies.

Executed this _____ day of May, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
  Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.