IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN A. McLEOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  06-0247 (JDB) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT A

Steven A. McLeal D.C.# 924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

August 7th, 2005

F.B.I. Public Corruption Squad
500 E. Zack St., Suite 610
Tampa, FL 33602

Public Corruption Squad,

    This letter is my official request, pursuant to the federal Freedom Of Information Act (FOIA) for any information currently in your possession of any evidence of criminal misconduct, exculpatory evidence or evidence planting or tampering by any persons involved in the case of State of Florida v. Steven A. McLeal, Case No. 00-15913 13th Judicial Circuit Court In And For Hillsborough County, Florida. Please respond to this request within the applicable time period under federal law. Thank you and God bless.

                        Sincerely,

w/file

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN A. McLEOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0247 (JDB) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 19, 2005

Mr. Steven A. McLeod
**DC#92480
Hamilton C.I.
10650 South West 46th Street
Jasper, FL 32052

F.B.I. #440685V9

Dear Mr. McLeod :

Your Freedom of Information-Privacy Acts (FOIPA) request is being returned. Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: _Steven A. McLeod, DC 924820 Hamilton C.I. (Main Unit_

Current Address: _10650 S.W. 46th St, Jasper FL 32052_

Date of Birth: _11/30/60_          Place of Birth: _Bethesda, Maryland_

Daytime Telephone Number: _____

You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek. _Soc. Sec # 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 Steven Alan McLeod_

_8101 N. Dakota Avenue, Tampa, FL_

_F.B.I. # 440685V9_

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature _____          Date _8/29/05_

To initiate your FOIPA request, please return the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place.

Sincerely yours,

David M. Hardy / JB

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Records Management Division

Enclosure

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN A. McLEOD,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　　　　　　)　Civil Action No.  06-0247 (JDB)
　　　　　　　　　　　　　　　　　　　　　　)
U.S. DEPARTMENT OF JUSTICE,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)

# EXHIBIT C



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*September 20, 2005*

MR STEVEN A MCLEOD
**924820
MAIN UNIT
10650 SOUTHWEST 46TH STREET
JASPER, FL 32052

Request No.: 1029110- 000
Subject: MCLEOD, STEVEN A

Dear Mr. McLeod:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

A search of the automated indices to our central records system files at FBI Headquarters located no records responsive to your FOIPA request.

Although no records responsive to your FOIPA request were located, we are required to inform you that you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U. S. Department of Justice, Suite 570, Flag Building, Washington, D. C. 20530, within 60 days from the date of this letter. The envelope and the letter should be clearly marked "Information Appeal." Please cite the FOIPA request number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN A. McLEOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-0247 (JDB) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# EXHIBIT D

October 3rd, 2005

Co-Director, Office of Info. and Privacy,
U.S. Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

Steven A. McLeod, D.C.#924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

10/12/05                    06-0128

INFORMATION APPEAL

Co-Director,

God's grace and peace to you in Jesus name! Please find the enclosed letter, which I am requesting that you consider as my information appeal of the FOIA request shown as Exh.# 4 from Station Chief David M. Hardy. This information exists and I am entitled to it. Thank you and God bless.

IN Christ,

OFFICE OF INFORMATION
AND PRIVACY

OCT 12 2005

RECEIVED

EXHIBIT   D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN A. McLEOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0247 (JDB) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT E

January 11th, 200?

Steven A. in Lead, D.C. #924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Federal Bureau of Investigations
7820 Arlington Expressway, Suite 200
Jacksonville, FL 32211

F. B. I.,

God's grace and peace to you in Jesus name! I was visited here on September 21st, 2004 by a male and female agent from your office, who were collecting information for the F.B.I Public Corruption Squad in Tampa. I was asked to chronicle some information about court cases that were fixed there and after your agents left I was initially reluctant to proceed further. Since then, I have written the F.B.I. office and U.S. Attorney's office in Tampa trying to get calendars for the years 1995-2000 but I haven't received a response, I need those calendars.

I also spoke to your agents about some MIRC chatroom conversations that I had with a guy in Yemen, prior to my arrest. There was some information about some questions the guy asked about nuclear power plants here in the U.S. that I forgot to tell your agents about when they were here. I wrote the F.B.I. office in Tampa about this and didn't receive a response so I would like to talk to your agents again.

While they were here, they spoke to Prison Inspector Cercy about my mail being tampered with and as you can see by the enclosed documents, we have a host of problems here. This letter is my official request for an investigation into the civil rights abuses in the D.O.C. I know your agency was involved in the Abu Gharib prison investigation in Iraq and we have as bad or worse problems here.

282 - 0
#4165

EXHIBIT E

Specifically, I am requesting an investigation into the beatings of inmates in the confinement areas. This problem is rampant in the D.O.C. and these officers are killing or seriously injuring inmates daily here and in other institutions. This investigation can be multi-agency but it needs federal oversight because many of these prisons are in rural areas that economically depend on the prisons so getting a state jury conviction is impossible. Many times the jurors are related to or friends of the defendants because they are sparsely populated areas. This needs federal investigators.

I can provide you names of other inmates who can provide specific details of incidents here but you would have to provide some level of protection for them to talk to you. The Inspector General's Office is basically incompetent and in bed with the D.O.C. You can't get a letter to them and when I was in B-Dorm, I could hear the inmates yelling and screaming while being beaten in confinement. Being a paralegal, lately I have had a lot of guys coming to me about how to stop this and I asking for an investigation by your agency. Thank you and God bless.

IN Christ,

Steven A. M⸰⸰ ⸰d, D.C.#924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Louis Vargas, General Counsel
Florida Department of Corrections
2601 Blairstone Road
Tallahassee, FL 32399

RE: Multiple Notices Pursuant To Fl. Stat. 768.28

Mr. Vargas

    God's grace and peace to you in Jesus name! Please find the four (4) notices of intent to file suit, pursuant to Fl. Stat. 768.28, for various issues, which I have been documenting. There will be a fifth notice sent you shortly for a constitution challenge of your grievance system. Let me explain briefly what has been going on here and what I have decided to do about it since we all know that the D.O.C. ignores grievances, doesn't care about federal litigation and generally believes it is above the law.

    Prior to my arrest on September 20th, 2000, I owned a business called the National Legal Alliance and I worked with attorneys nationwide in federal criminal defense and as a consultant to attorneys in civil rights litigations involving the D.O.C. Some of your staff attorneys may remember me, I entered the D.O.C. on April 11th 2001, and I was relatively quiet because my bone to pick was with the prosecutors and police officers in Tampa who planted and tampered with evidence and not the D.O.C. All of the changed last summer. I've spent 3½ years quietly documenting the problems here.

    On June 27th 2004, I received a settlement check for $2,211.34 from the Buspar Antitrust Litigation Administrator and the check was attached to a letter from Florida Attorney General Charlie Crist. The Inmate Bank sent the check back saying it was from a private company and then jerked me around for 3½ months in the grievance process before I found out what happened to

1

the check. I still haven't gotten it straightened out.

Also, I have documented over 40 instances in which my mail was being tampered with, sent back or thrown away. Many of the letters, I placed directly in the hands of Ms. Vicki Williams, who's husband is a captain here, but the letters never made it. This issue was addressed with Prison Inspector Cercy by two F.B.I. agents who came here to visit me on September 21st, 2004, but it still has continued to occur. My money and my mail are two things the D.O.C. should have left alone and let me explain what has been going on here.

Since Warden Jack Sapp, Asst. Warden McCallum and Colonel Coleman took over here, they have enforced strict compliance of the rules by inmates without any regard to Chapter 33, F. A.C. or the I.O.P's by the staff. There is no discipline or supervision of the officers and a severe lack of communication, which has created a dangerous environment. The officers basically just do what they want without any fear of the consequences. Let me give you a few examples.

Officer Birchard worked in the property room and took care of the legal lockers in the law library where inmates could keep their excess legal material. When Colonel Coleman took over here, Officer Birchard took a job working for the Colonel and Ms. Lee began handling the legal lockers. Officer Birchard's documentation was so sloppy and incomplete when Officer Lee took over, Officer Lee contacted all of the inmates who had lockers to get the lock combinations and the locker assignments corrected.

On the afternoon of December 29th, 2004, Officer Birchard decided she was going to straighten out the law library lockers using her old documentation. She had an announcement made on the yard but the yard was optional so    many of the

2

inmates who had lockers were in the dorm or laundry, library, education, vocation or other areas where the announcement couldn't be heard. Officer Birchard cut the locks of the lockers even though they were properly assigned. Officer Lee had the combinations and all of the sargeants have a key to the locks.

After cutting all of the locks and confiscating the legal work, Officer Birchard realized her mistake. One inmate WORKED in the library and Officer Birchard cut his lock off. When the inmates complained, Ms. Birchard told them if they filed grievances against her, then she would have them locked up in confinement, where they regularly beat, stomp and gas inmates who are handcuffed and shackled while not resisting. Sargeant Stohlman used to run the beat and stomp squad but he was moved to I-Dorm and now Capt. Touchton does the honors here. This is what occurs in the D.O.C. system wide. I can prove it, too.

The afternoon after Officer Birchard cut the locks off was December 30th, 2004 and in the afternoon Sgt. Tucker here in I-Dorm ran everybody out to the yard, even though it was optional. Sargeant Tucker does this quite often simply because she wants too. I went to Sgt. Hughes at the recreation gate and he said the yard was optional and to find a sargeant on the yard to call Sgt. Tucker or the captain so we could get back in the dorm. We've had the riot squad here on 11/22/04 and 12/13/04 to quell disturbances on the yard so it isn't a place you really want to be if you can avoid it.

I went on the yard and found Sgt. Harris and told him about Sgt. Tucker running us out. He just shook his head but he wasn't near a phone so he told me to just stay on the yard and he would talk to the captain later. A short time later I saw Captain Williams on the yard and asked him why Sgt. Tucker was running I-Dorm inmates out when the

yard was optional. He responded, "Who said the yard was optional?" He was trying to cover for Sgt. Tucker and make me believe it was mandatory. When I responded that Sgt. Hughes and Sgt. Harris said the yard was optional, Captain Williams was at a loss for words and Sgt. Glass had walked up in the meantime, so he intervened and told me to go get a haircut, I did.

Later that night of December 30th, 2004, on 4 to 12 p.m. Sgt. Stohlman was working. The following day was a holiday for New Years so we should have been on holiday routine that night and allowed to stay up until 1:00 a.m. When 11:00 p.m. came around Sgt. Stohlman shut the T.V. off and locked everybody down like a regular work day. When the midnight shift came on they followed Sgt. Stohlman's lead and at 6:00 a.m. turned all the lights on like a regular work day. It wasn't until we went to breakfast and I told one of the sargeants about what happened and asked why I-Dorm was the only dorm with the lights on, then the captain called down here and straightened it out. Sargeant Stohlman has worked here for 17 years and he knew it was a holiday routine but he does what he wants.

These three incidents chronicle what happened here in a 48 hour period, which is typical here. Standing alone they don't mean much but when combined with the other conditions here it does mean a lot. The point in these three incidents is that the officers do what they want and generally don't have a clue what they are doing but inmates are held to strict compliance with the rules. The administration here does not supervise, discipline or communicate with the officers or staff, which creates a dangerous situation.

In the enclosed notice of intents you will see how we are deprived of things like toilet paper and live in conditions that are an accident waiting to happen. No one will come down here when it rains. We have water running over conduit

4

next to the electrical outlet, it runs out of the window behind the fan in the dayroom and if it is raining hard and the fan is on, then you get sprayed. If the fan is off it drips off the emergency lights over the emergency exit. We have water that puddles at the bottom of the stairway and all of the cell windows leak on both floors. They just worked on the emergency exit door at the end of wing one on January 7th, 2005 because the door either jams shut or they can't get it to close from the door frame being warped. All of this is caused by the building foundation settling and cracking.

The problems with Aramark food service are well documented and I've dropped from 170 pounds to about 150 pounds from lack of nutrition. A peanut butter sandwich here is a scoop of peanut butter about the size of a quarter between two slices of bread. They always have notice when inspectors are coming so the meals look real good. Once the inspectors leave then it goes back to normal. Even if you got a decent meal, then you wouldn't have time to eat it because in 3½-5 minutes after you sit down the officers throw you out of the chow hall. If you ask someone for salt or pepper they throw you out for talking.

When you combine the officers conduct with the problems like lack of food, no toilet paper, flooding, etc, then you have a dangerous situation. Sargeant Stohlman and Officer Thompson have received written death threats because Officer Thompson came in yelling about the note one night. Sargeant Tucker writes a lot of false and petty paperwork and then hollers and screams at you and talks bad about your family. I warned Celeste Kemp about the attempts to start a riot here in a letter on November 11th 2004 but it was ignored. Well, we had a riot here 11 days later on November 22nd 2004.

Let me explain why all of this is important to you. If you will notice I am serving the F.B.I. and F.D.L.E. a copy

5

of this letter and the notice of intents that are enclosed. I'm doing this for several reasons. First, I'm not up for a transfer so if I get a retaliatory transfer the reasons will be documented. I'm far enough from Tampa to stay out of the way but close enough to Jacksonville for the F.B.I. agents in Jacksonville to come talk to me about any of the information they need for the F.B.I. Public Corruption Squad in Tampa.

Secondly, I've had one D.R. in 3½ years and that one was from a cigarette smoking infraction in my cell. I've never been to confinement here in 3½ years and I did 3 years in the D.O.C. from 1988-91 and never went to confinement. I live within your rules so if I start getting a lot of bogus or petty paperwork, then it will only be for exercising my right to redress of grievances. It should be clearly understood I am not in fear of physical harm by staff or inmates.

Third, and most importantly, you are now on notice of the problems here and with that notice comes responsibility. If you fail to act to correct these problems and the previous named officers or inmates are harmed in a riot or disturbance, then I'm going to seek criminal prosecution of D.O.C. officials here and an in Tallahassee under Title 18 U.S.C. 241, 242 and/or 245 (b). Furthermore, if there is a fire or other emergency in this dorm and an inmate or officer is harmed or dies, then I'm going to seek criminal charges under the previously mentioned federal statutes or state charges up to manslaughter by culpable negligence.

Lastly, in separate letters to the F.D.L.E. and F.B.I., I am going to request an investigation into the civil rights violations in the D.O.C. confinement areas including that they send undercover agents in the prison system for a short period time to get put in displinary confinement

6

to document the beatings of inmates unnecessarily in confinement. It won't matter what prisons they go into because it happens in all of them including the close management prisons. The officers beat people for sport and the fun of it and I'm going to put a stop to it!

In conclusion, you may ignore grievances and not care about litigation but you will pay attention when some of your employees leave work in handcuffs. I'm waiting to leave here now to go back to outside court and I have been documenting problems here for the past 3 1/2 years and most of the documentation has been sent out. At the end of 180 days, I will file the litigations in the notice of intents. The people in Tampa underestimated my ability to nail them for the evidence planting and tampering so if you underestimate me, then I will be able to demonstrate the power of God in my life to stop the abuses and correct these problems. Thank you and God bless.

DATED: 1/12/05

IN Christ,

Steven A. Mc Leod, Pro Se

cc: F.B.I.
    F.D.L.E.
    Dept. of Insurance
    file

7

Steven A. McLeod, D.C#924820
**NAME**

Hamilton C.I. (Main Unit)
**ADDRESS**

10650 S.W. 46th St.

Jasper, FL 32052

**DATE:** January 14th, 2005

**RE: Notice of Intent to Sue/Waiver of Sovereign Immunity**

James Crosby, Secretary
Fl. Dept. of Corrections
2601 Blairstone Road
Tallahassee, FL 32399

Division of Risk Management
Department of Insurance
Larson Building
The Capitol
Tallahassee, Florida 32399-0300

**PLEASE TAKE NOTICE** THAT THIS CONSTITUTE THE 'WRITTEN' CLAIM' REQUIREMENT PURSUANT TO § 768.28(6), FLORIDA STATUTES (1997). IF THIS CAUSE IS NOT SUFFICIENTLY RESOLVED WITHIN 180 DAYS, I WILL FILE SUIT.

## WRITTEN CLAIM

This is my official notice of intent to file a two-count complaint for damages, pursuant to Title 42 U.S.C. 1983, concerning the denial of toilet paper. The first count will be an 8th Amendment claim for cruel and unusual punishment for the D.O.C. not providing toilet paper. On more than one occasion, even after filing grievances, I had to use the bathroom and then get directly in the shower because I didn't have any toilet paper to wipe myself with.

On November 5th, 2004, I asked Sgt. Stohlman and Officer Thompson for toilet paper and to turn the heat on and they just laughed and ignored me. On November 17th, 2004, Sgt.

Stohlman had Officers Thompson and Stenquist set about 30 rolls of toilet paper on the dayroom table during 4-12 p.m. shift and yell "Toilet paper." The toilet paper rolls got Knocked off the table causing a free-for-all in the dayroom as inmates scrambled for toilet paper while the officers laughed at the scene. The above stated incidents satisfy the subjective intent deliberate indifference for an 8th Amendment claim.

The second count will be a violation of the 1st Amendment constitutional right to redress of grievances because I filed Grievances #04-6-33847, 04-6-33848 and 04-6-34792 and the responses were based on false information or failed to correct the problem. I will seek monetary damages and/or injunctive relief as is appropriate. Thank you and God bless.

**THIS EVIDENCE AND TESTIMONY IN SUPPORT WILL PROVE NEGLIGENCE**

Sincerely

DC# 924820 _____ Dorm J-1214L
Hamilton C.I. (Main Unit)
10650 S. W. 46th St.
Jasper, Florida 32052

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that a true and correct copy of the foregoing has been furnished to Florida Department of Law Enforcement, P.O. Box 1489, Tallahassee Fl, 32302 and F.B.I., 7820 Arlington Expressway, Suite 200, Jacksonville Fl 32211 Sent by mail on this 12th day of January, 2005

Claimant.

Steven A. McLeod, D.C. #924820
**NAME**

Hamilton C.I. (Main Unit)
**ADDRESS**

10650 S.W. 46th St.

Jasper, FL 32052

**DATE:** January 14th 2005

**RE: Notice of Intent to Sue/Waiver of Sovereign Immunity**

James Crosby, Secretary
Fl. Dept of Corrections
2601 Blairstone Rd.
Tallahassee, FL 32399

Division of Risk Management
Department of Insurance
Larson Building
The Capitol
Tallahassee, Florida 32399-0300

 

    **PLEASE TAKE NOTICE** THAT THIS CONSTITUTE THE 'WRITTEN' CLAIM' REQUIREMENT PURSUANT TO § 768.28(6), FLORIDA STATUTES (1997). IF THIS CAUSE IS NOT SUFFICIENTLY RESOLVED WITHIN 180 DAYS, I WILL FILE SUIT.

**WRITTEN CLAIM**

This is my official notice of intent to file suit pursuant to Title 42 U.S.C. 1983 for the leaks and flooding here in I-Dorm. This building is a T-building, prefabricated dormitory and the leaks are caused by structural design flaw causing the foundation to crack. We have water running down the wall near electrical outlets, windows leaking in all the cells on both floors, emergency exit doors sticking shut, water puddling in front of stairways and water running down the walls and dripping off the emergency lights. These conditions violate the 8th Amendment of the U.S. Constitution. This claim will include a violation of the 1st Amendment of

the right to redress of grievances. I filed an emergency grievance #04-6-33889 and it was denied as not being an emergency. The above conditions create fire and safety hazards and no one checked to see if an emergency existed. In June of 2004, the ceiling in Dorm G-1 collapsed from a roof leak and luckily no one was hurt. This problem exists in all D.O.C. prefabricated, T-cell buildings. I will file this litigation in the U.S. District Court, Middle District of Florida, Jacksonville Division and every T-building in the Court's jurisdiction will be inspected for unsafe conditions. This litigation will seek injunctive relief and monetary damages for the constitutional violations.

**THIS EVIDENCE AND TESTIMONY IN SUPPORT WILL PROVE NEGLIGENCE**

Sincerely

DC# 974820          Dorm I-1214L
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, Florida 32052

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing has been furnished to Florida Department of Law Enforcement, P.O. Box 1489, Tallahassee, FL 32302 and F.B.I., 7820 Arlington Expressway, Suite 200, Jacksonville FL 32211

Sent by mail on this 12th day of January, 2005.

Claimant.

Grievance Number - 04-6-33889

Steven A. McLeod, D.C.#924820
**NAME**

Hamilton C.I. (Main Unit)
**ADDRESS**

10650 S.W. 46th St.

Jasper, FL 32052

**DATE:** January 14th, 2005

**RE:** NOTICE OF INTENT TO SUE/WAIVER OF SOVEREIGN IMMUNITY

James Crosby, Secretary       Division of Risk Management
Florida Dept. of Corrections   Department of Insurance
2601 Blairstone Rd.            Larson Building
Tallahassee, FL 32399          The Capitol
                               Tallahassee, Florida 32399-0300

 

**PLEASE TAKE NOTICE** THAT THIS CONSTITUTE THE 'WRITTEN' CLAIM' REQUIREMENT PURSUANT TO § 768.28(6), FLORIDA STATUTES (1997). IF THIS CAUSE IS NOT SUFFICIENTLY RESOLVED WITHIN 180 DAYS, I WILL FILE SUIT.

**WRITTEN CLAIM**

This is my official notice of intent to file suit, pursuant to Fl. Stat. 768.28(6), for the denial of my constitutional right to privacy for the Florida Department of Corrections (DOC) allowing female officers to work in dormitory areas in open view of toilets. I have a constitutional right to privacy while performing bodily functions. Fortner v. Thomas, 983 F2d 1024 (11th Cir. 1993). This action will be brought as a three count complaint for damages pursuant to Title 28 U.S.C. 1983.

The DOC has instituted a policy of requiring cell doors to be locked in the open position for security reasons. The

DOC may have a legitimate penological interest for the doors to be locked in the open position for security reasons so that the issue. The issue is that this policy in T-buildings causes the toilets to be in open view of the doorway and we routinely have female officers working and walking through the dorm so they have a direct view of the toilet while I'm performing bodily functions. I'm a Christian so this causes a particular problem for that reason. This violates the 1st Amendment of the U.S. Constitution.

In the open-bay dorms the same problem exists but for a different reason. I was housed in B-Dorm, an open bay dorm, and there is a wall at the shower but the officers stations are elevated so that female officers have a direct view of inmates genitals when showering. This is prohibited by Fortner, supra also. The above will be Count One of the Complaint.

The second count of the complaint will be an equal protection violation because female inmates in the DOC are not subjected to showering or performing bodily functions in open view of male officers. Chapter 33-208.301(3) specifically provides the Secretary of the Department or his designee can designate gender specific areas in DOC facilities. This provision is implemented in the female inmate housing and shower areas but not for male inmates. This violates the equal protection clause of the U.S. Constitution.

The third count will be for a violation of my 1st Amendment right for redress of grievances. I filed a direct grievance of a

sensitive nature, which was deemed an administrative appeal. This determination was incorrect. This was a grievance of a sensitive nature pursuant to Chap. 33-208.301(3) it is the Secretary who must designate an area gender specific and due to the vast number of female officers working male inmate housing areas it would require drastic changes and shortages in security officers for male dormitories to be made gender specific and could cause gender discrimination litigations against the D.O.C. by female officers. This scenario is of a sensitive nature and the grievance response violated my 1st Amendment rights under the U.S. Constitution.

**THIS EVIDENCE AND TESTIMONY IN SUPPORT WILL PROVE NEGLIGENCE**

Sincerely

Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing has been furnished to Florida Department of Law Enforcement, P.O. Box 1489, Tallahassee, FL 32302 and F.B.I., 7820 Arlington Expressway, Suite 200, Jacksonville, FL 32211 by delivering to prison authorities on this 12th day of January, 2005.

Claimant.

Grievance # - 04-6-8395l
05-6-00042

Steven A. McLeod, D.C #924820
**NAME**

Hamilton C.I. (Main Unit)
**ADDRESS**

10650 S.W. 46th St.

Jasper, FL 32052

**DATE:** January 14th, 2005

**RE: Notice of Intent to Sue/Waiver of Sovereign Immunity**

James Crosby, Secretary
Fl. Dept. of Corrections
2601 Blairstone Road
Tallahassee, FL 32399

Division of Risk Management
Department of Insurance
Larson Building
The Capitol
Tallahassee, Florida 32399-0300

     **PLEASE TAKE NOTICE** THAT THIS CONSTITUTE THE 'WRITTEN' CLAIM' REQUIREMENT PURSUANT TO § 768.28(6), FLORIDA STATUTES (1997). IF THIS CAUSE IS NOT SUFFICIENTLY RESOLVED WITHIN 180 DAYS, I WILL FILE SUIT.

**WRITTEN CLAIM**

This is my official notice of intent to file suit, pursuant to Fl. Stat. 768.28, in a three count complaint under Title 42 U.S.C 1983. The first count will be for the Inmate Bank improperly returning a check I received for $2,211.34 on July 27th, 2004, from the Buspar Antitrust Litigation Administrator attached to a letter from Florida Attorney General Charlie Crist. The D.O.C Inmate Bank returned this check by stating it came from a private company which is incorrect and improper.
    The second count will be for denial of my 1st Amendment right to redress of grievances because the Inmate Bank kept improperly

converting my informal grievances to inmate requests. It took 3½ months and multiple grievances before I could even find out what happened to the check.

The third count will be for violation of the Taking Clause of the 5th Amendment for the D.O.C. taking interest earned on my inmate account. Florida Statute 944.516 (g) provides me a property, interest on the money and interest in my inmate account. By the D.O.C. implementing Chap. 33-203.201(1)(a) + (e) the Department has exceeded its rulemaking authority of Fl. Stat. 120.536 (1) and violated the 5th Amendment of the U.S. Constitution. This count may be severed to include class action averments. I will seek monetary damages and/or injunctive relief as appropriate.

**THIS EVIDENCE AND TESTIMONY IN SUPPORT WILL PROVE NEGLIGENCE**

Sincerely

DC# 924820                    Dorm I-1214L
10650 S.W. 46th St.
Hamilton C.I. (Main Unit)
Jasper, Florida 32052

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that a true and correct copy of the foregoing has been furnished to _____
Florida Department of Law Enforcement, P.O. Box 1489, Tallahassee, FL 32302
and F.B.I., 7820 Arlington Expressway, Suite 200, Jacksonville, FL 32211
Sent by mail on this 12th day of January, 2005.

Claimant.

Grievance # 04-6-33911
        04-6-27645
        04-6-31145

January 20th, 2005

Steve. A. McLeod D.C.# 924820
Hamilton C. I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Judge Richard Davis, Jr.
Hamilton Co. Courthouse
207 N.E. 1st St.
Jasper, FL 32052

RE: Case No. 24-2003-CC-0053

Judge Davis,

God's grace and peace to you in Jesus name! I am writing to you because I understand you want to transport me to the Hamilton Co. Courthouse. I wanted to talk to you yesterday but your J. A. insisted you weren't there. Moving me right now from here to there may be a lot more difficult than you think and I don't believe a transport order from you will accomplish that objective. I'll explain why.

I got sent to prison for something I didn't do and my conviction was obtained by tampering and planting of evidence by police officers and prosecutors. I did federal criminal work in my business and by God's grace the F.B.I. started an investigation. They put pressure on the prosecutor in my case and she told on a whole slew of people, including two judges who were involved in my case alone. With police officers, prosecutors and judges involved, the F.B.I. put in certain controls to keep a judge they are investigating from signing a transport order so a police officer they are investigating could pick me up and take me out and shoot me. I understand the federal indictments are coming

January 20th, 2005

Steve. A. McLeod, D.C. # 924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Judge Richard Davos, Jr.
Hamilton Co. Courthouse
207 N.E. 1st St.
Jasper, FL 32052

RE: Case No. 24-2003-CC-0053

Judge Davis,

God's grace and peace to you in Jesus name! I am writing to you because I understand you want to transport me to the Hamilton Co. Courthouse. I wanted to talk to you yesterday but your J.A. insisted you weren't there. Moving me right now from here to there may be a lot more difficult than you think and I don't believe a transport order from you will accomplish that objective. I'll explain why.

I got sent to prison for something I didn't do and my conviction was obtained by tampering and planting of evidence by police officers and prosecutors. I did federal criminal work in my business and by God's grace the F.B.I. started an investigation. They put pressure on the prosecutor in my case and she told on a whole slew of people, including two judges who were involved in my case alone. With police officers, prosecutors and judges involved, the F.B.I. put in certain controls to keep a judge they are investigating from signing a transport order so a police officer they are investigating could pick me up and take me out and shoot me. I understand the federal indictments are coming down and it will involve 30 to 40 people so at this point in time, the feds are real particular about where I go because if something happens it becomes a public relations nightmare for them.

I'm not real sure what the solution is. If you can't get the conference call to work, then I may end up just

dismissing this litigation. The feds may resolve it because they want me pretty happy. It may be easier for me to have the F.B.I. lock the Pink brothers up for Federal criminal charges for fraud while involved in interstate commerce and getting my money through restitution. It may be what they deserve for continually lying to people and I've tried to settle this and they keep lying to me.

IF I'm still here on January 31st, I just don't see them allowing me to be transported to your office. It may go off alright but it may be stopped by them. I'm not even sure who to address it with here because even my classification officer knows very little. I do know if my bunk number even changes, it sets off alarms in Tallahassee and they notify the F.B.I. Trying to transport me on such short notice may open a can of worms which is best left closed. I'm going to try to contact the feds and they may contact you. I just wanted you to know this may not be as easy as you think. Please understand we are dealing with a federal bureaucracy which complicates things.

So, let me know how you wish to resolve this, I'm trying to settle it as you can see by the enclosed letter. If the feds come see me, then I'll talk them and see what they say. Thank you and God bless.

IN Christ,

90° heat, with high humidity in Class-A uniform. I asked him why he singled me out when he knew that I had just put all of this paperwork on him. This was a blatant retaliation. The man was trying to work me until I fell out again. When he realized it would appear as a retaliation, he called out the rest of Grounds Two for work. I became very dizzy again and my stomach became upset but I didn't go to the clinic.

This is getting ridiculous. I have had Inspector Fontaine called twice and sent her a request. I called home tonight and if I die out here because no one does anything about this, then it's going to hit the fan. There isn't any sense in this and something needs to be done. Please come see me or set up a phone call for me or call the Warden, before this gets out of hand. Thank you and God bless.

IN Christ,

June 26th, 2005

Steven A, McLeod D.C.# 960660
Hamilton C. I. (Main Unit)
10650 S. W. 46th St.
Jasper, FL 32052

Agent Maricotti (?)
Federal Bureau of Investigation
7820 Arlington Expressway, Suite 200
Jacksonville, FL 32211

Agent Maricotti (?),

God's grace and peace to you in Jesus name! I am writing to you because you and your partner came to see me on September 21st, 2004, and I need to talk to you again about some problems here. I have enclosed a copy of a letter to Governor Jeb Bush about an incident, which occurred here on June 21st, 2005. This sargeant maliciously tried to hurt me by making me work in excessive heat without any water, and I was taken to the clinic under a medical emergency for heat exhaustion. I had to go back to the clinic under a medical emergency yesterday because a blood vessel burst in my right eye. I see the doctor on Tuesday.

On January 12th 2005, I sent you some documents about the problems here and I outlined some of the civil rights abuses to you in my letter dated April 27th 2005. These officers here beat, gas and abuse inmates just to get their rocks off. It's senseless, cruel and inhumane. During the week of 6/17 - 6/24 somebody went in my law library locker and stole the file containing grievances, grievance responses, and Notices Of Intent To File Suit. The only people who have access to this locker are me and officers with a lock key. The theft of this file effectively precludes me from filing five (5) civil rights litigations against this institution and the D.O.C. This is how these people work.

I'm asking you to come out here and talk to me because I'm not making allegations I can't prove. I can provide you with names, dates, times, locations and witnesses of civil rights abuses under Title 18 U.S.C. 241, 242, and 245. If the F.B.I. can investigate prisoner abuse in Iraq, then they can do it here. Thank You and God bless.

IN Christ,

cc: file

P.S. I sent a copy of the letter to Governor Bush to the F.B.I. office in Tampa on Friday with a letter to them too.

June 22nd, 2005

Steven F. Isleak, D.C. #724820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Governor Jeb Bush
The Capitol
Tallahassee, FL 32399

Governor Bush,

God's grace and peace to you in Jesus name! I sent you a letter dated June 19th 2005 and I wanted to write you concerning an incident that happened here yesterday. I'm sending copies of this letter to the F.B.I. and F.D.L.E. because of the cruelty and stupidity being practiced here is criminal conduct, I'm not going to stand by and wait on you to do something and have these people here kill me or some other inmate,

I'm a 44 year old, white male, who was born with only one kidney so I become dehydrated very easily. I work on Inside Grounds 2 and we are required to cut grass here with the old-fashioned, push-propelled lawn-mowers. They aren't gas-powered, the blades turn manually as you push them, Since Colonel Coleman took over here these are what inmates have to use to cut the grass,

Shortly, after eating lunch yesterday, Sgt. Graham called us out to work. There were 15 to 20 inmates who he wanted to cut the grass around I-Dorm, I asked Sgt. Graham about getting us a water jug because it was about 90° outside. He said, I didn't need water because I had just eaten lunch, As I worked, I started to get dizzy, because it was so hot and we were required to work in

Class-A uniform with our blue shirts tucked in. Sgt. Graham laughed and told me if I went to pass out to tell him before I hit the ground so he could call the clinic. This isn't funny. He also said, "No mercy and no slack anymore." I hope he remembers that.

In the meantime, I saw Captain Baker come out of I-Dorm and I started calling him as I followed him. I finally caught up to him and told him that Sgt. Graham had us working out in that heat without any water. He said he would get us some but he never did. Just as we were finishing up, I became very dizzy and nauseous and had to be taken to the clinic for a medical emergency. These officers here are endangering people's lives by making us work in 90° heat, in Class A uniform with no water. This is cruel and criminal.

This compound was built for 700-800 inmates but houses over 1,200. The rec. yard has two (2) pavillions for shade, and combined about 250 inmates can get out of the sun but we have about 900-1,000 inmates on the yard. In years past, the rec yard here was optional during the afternoons in the summer months because of the high heat and lack of shade. Colonel Coleman stopped this and there has been several inmates overcome by the heat.

What is happening here is cruel, Governor, and I'm going to put a stop to the prisoner abuse. I'm going to have Captain Baker's job and see Sgt. Graham put in prison for what they did. Prison Inspector Fontaine has been called twice to come talk to me and hasn't shown up. This is getting ridiculous and is inhumane. Thank you and God bless.

IN Christ

cc: F.B.I.
    F.D.L.E.
    file

TOTAL P.08

June 29th, 2005

Steven "M_____"
Hamilton C. I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Agent Maricotti
Federal Bureau of Investigation
7820 Arlington Expressway
Suite 200
Jacksonville, FL 32211

Agent Maricotti,

God's grace and peace to you in Jesus name! I am writing you again after my letter to you on June 26th 2005 because of continual problems here. I sent a letter to Warden Sapp, with a copy of my letter to the Governor about my request to your office and the F.D.L.E. for criminal charges against Sgt. Graham for what he did to me. This sargeant is still trying to hurt me.

On Monday afternoon, June 27th 2005 I was called to the Security Building and Major Maddox, Lt. Herring and Sgt. Glass were present. Major Maddox was highly upset that I had written you and the F.D.L.E. He kept saying, "Your going to work" and it was obvious he was trying to downplay and coverup what Sgt. Graham did.

I went to see the doctor on Tuesday and he told me the blood vessel bursting in my eye on Saturday was a residual effect of being overly dehydrated. He didn't do anything and wouldn't give me any type of pass to keep me out of the heat while working.

This afternoon, Sgt. Graham called out Grounds 3 but had I-Dorm called for me and another inmate to come to work. I work for Grounds Two. Sgt. Graham had me out there pushing a lawnmower to cut wet grass in over

(p.1)

Serial 3
282-A-JK-C49296-_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN A. McLEOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0247 (JDB) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT F

April 4th, 2006

Steven A. McLeod, D.C. #924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

Ann Shannon, Esq.
Federal Bureau of Investigation
7820 Arlington Expressway, Suite 200
Jacksonville, FL 32211-7499

x

PROVIDED TO HAMILTON C.I. ON
4/5/06  FOR MAILING

RE: FOIA Litigation, McLeod v. DOJ, FBI
U.S.D.C. - 06-CV-0247

Ms. Shannon,

God's grace and peace to you in Jesus name! I am in receipt of your letter and information concerning the above-referenced matter and I appreciate your response. One item notably absent from your response was any reference to the interview done here on September 21st, 2004 with me by two (2) agents from your office. The reason the F.O.I.A. request was directed to the Tampa F.B.I. office is because your agents told me that the interview was being done for the Tampa office. The female agent had a letter that I had written in her possession, she took notes during the interview and she left me a handwritten instruction sheet on the information needed by the F.B.I. office in Tampa, which I attached as Exhibit #9 of the F.O.I.A. litigation.

The agents had to complete some type of Contact/Interview Report for the September 21st, 2004 interview to send from your office to the Tampa office and I want it. If you fail to provide it and Mr. Burch executes a declaration of disclosure, then I'm going to file for a court order to obtain the logs from the Control Room here at Hamilton C.I. (Main Unit) for September 21st, 2004 have a deposition done of Prison Inspector Cercy, who escorted your agents and then move for sanctions in federal court against you and Mr. Burch. I also believe the interview was taped because there was a tape recorder on the desk.

On a side note, I sent Agent Alexander McDonald in your office a letter dated March 20th, 2006 and I would like to know if it was received. Also, on the copy of my letter dated June 24th 2005, which you provided, at the bottom there appears to be an investigation number and you can consider this letter my F.O.I.A. request for the report of that investigation. Thank you and God bless.

cc: AUSA Alan Burch
    file

IN Christ,

EXHIBIT   F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN A. McLEOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0247 (JDB) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT G

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MAY 5, 2006

MR STEVEN A MCLEOD
**924820
MAIN UNIT
10650 SOUTHWEST 46TH STREET
JASPER, FL 32052

Subject: MCLEOD, STEVEN A

FOIPA No. 1029110- 001

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

4 **page(s)** were reviewed and 4 **page(s)** are being released.

☐ Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

  ☐ referred to the OGA for review and direct response to you.

  ☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☐ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).

**EXHIBIT** *G*

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

Although the enclosed document does not appear to be responsive to your original Freedom of Information-Privacy Acts request, it is being released to you in connection with your letter dated April 4, 2006, addressed to Ann Shannon of our Jacksonville Field Office (JKFO). For your additional information, the file number written on your June 29, 2005, letter addressed to Agent Maricotti of our JKFO which you believe to be an investigation number is simply a control file which houses complaints such as your letter. There are no investigatory records maintained therein and only serial three of that file pertains to you.

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    09/22/2004

        STEVEN A. McCLEOD, white male, DOB 11/30/60, SSN 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, Florida Department of Corrections Inmate number A-924820, was interviewed at the Hamilton Correctional Institution, 10650 S.W.46th Street, Jasper, Florida 32052, telephone number (386) 792-5151, where he is serving a life sentence. McCLEOD was advised as to the identity of the interviewing agents and as to the nature of the interview. He then provided the following information:

        McCLEOD has completed 3 years of college. After being released from prison in 1991 he attended Paralegal Careers, a small private school and graduated in 1993 as a paralegal. He worked for [                    ] in Tampa from 1994 to 1995 as a free lance    b6 -2
paralegal, then started his own company called National Legal Alliance. The company worked with Federal Criminal Defense    b7C -2
attorneys. McCLEOD reviewed the legal aspects of wire tap (Tit___ III), surveillance, indictments and affidavits for defense attorneys.

        McCLEOD advised his father, HUGHEY McCLEOD was the Chief Deputy to the Clerk of Circuit Court, RICHARD AKE, in Hillsborough County. Therefore, McCLEOD either knew personally many of the judges or knew of many of the judges in Hillsborough County.

        McCLEOD stated he knew the late HARRY COE, former Circuit Court Judge in Hillsborough County. In 1991 COE became an elected State Attorney. He was ruthless in prosecution. In 2000 he came under investigation regarding worthless or forged checks and having guns in his office. COE had a $200,000/year income and often visited gambling websites on his laptop computer. McCLEOD said one day COE was found dead.

        McCLEOD advised the written statement he made in his letter to Judge MENENDEZ, "The last case I have personal knowledge of happened a month before my arrest," was the following:

[                              ] had been out of jail for [        ]

[                    ]. In August 2000 Tampa Police Detectives on the vice squad, came to their house, knocked the front door and bedroom

                                                                    b6 -3

Investigation on    9/21/2004    at Jacksonville, Florida              b7C -3

File #  194A-TP-55469                          Date dictated  9/22/2004

SA
by  SA  [                    ]            b6 -1                    McLeod-1

                                          b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of    Steven A. McCLeod                    , On 9/21/2004  , Page    2
C

door down and arrested⌐                    ⌐                    McCLEOD advised he
knew⌐        ⌐last name but could not recall it at the moment.  He
said in June 2002⌐

⌐                                        ⌐ sometime in August
2000⌐    ⌐came to the N. Dakota address to discuss the proceedings
with⌐            ⌐The met in the living room.  McCLEOD and another
man named⌐                                                ⌐McCLEOD
said he did not know⌐

                                                b6 -2,3

sentence.  McCLEOD saw⌐                        ⌐b7C -2,3

        The next morning McCLEOD went to court with⌐            ⌐
⌐                            ⌐to wait a moment while he walked
out into the hallway and met with the prosecutor.  McCLEOD did not
know the prosecutor's name.  McCLEOD watched out the glass door
window into the hallway and⌐
⌐                            ⌐the night before.  The            ⌐b6 --3
courtroom.⌐                ⌐                                      ⌐b7C -3
jail sentence.  McCLEOD had not seen or spoken to⌐        ⌐since
his he⌐                        ⌐McCLEOD said Judge ESPINOSA may
have been the presiding judge.

        McCLEOD described⌐                                        ⌐b6 -3
⌐                                                                ⌐b7C -3

        McCLEOD then advised another written statement he made in
his letter to Judge MENENDEZ, "I personally made 4 payments for a
defense lawyer to the late HARRY COE on East Street which runs
behind the Annex," was the following:

        The four instances occurred from⌐        ⌐and were all
for HARRY COE.  They occurred while McCLEOD⌐
⌐                            ⌐LNU.  McCLEOD would not give⌐    ⌐
last name because he said⌐                                        ⌐b6 2,3
⌐                                                                ⌐b7C 2,3

                                                McLeod-2

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of    Steven A. McCLeod    b6 2,3    , On 9/21/2004   , Page   3
     C                          b7C 2,3

cases. [ ] defended a lot of subjects on drug charges. [ ]
[ ] would have
McCLEOD file legal paperwork at the courthouse on a regular basis.
McCLEOD usually did it at the end of the day on his way home. A
man called [ ] always came to [ ] office with a lunch sac. One
day after [ ] left [ ] office, [ ] told McCLEOD he wanted to
talk to him. McCLEOD was going to the courthouse to drop off some
legal paper for [ ] on his way home. [ ] asked McCLEOD if he knew
who HARRY COE was. McCLEOD said he did. [ ] then asked McCLEOD to
drop off a manila envelope to COE at COE's car, which was parked on
East Street behind the Annex. The manila envelope was stapled at
the top and taped with thick binding tape at the top also. [ ]
told McCLEOD to take the envelope to COE before he went to the
Courthouse. The next morning [ ] thanked McCLEOD.

       About a week to ten days later [ ] asked McCLEOD to do
the same thing again. Deliver a manila envelope to COE at his car.
The third time [ ] asked McCLEOD to deliver a manila envelope to
COE he didn't bind the envelope with tape. The flap was open a bit
so McCLEOD looked in the envelope and saw there were stacks of
money in it. So the fourth time [ ] asked McCLEOD to take a manila
envelope to COE, McCLEOD took an empty envelope with him. McCLEOD
went into the bathroom, tore open the envelope [ ] had given him,
took out $8,000 in cash, kept $1,000 and put the remaining $7,000
in the new envelope and sealed it. McCLEOD then gave COE the    b6 -3
envelope. [ ] did not say anything to McCLEOD about the delivery b7C -3
However, [ ] never asked McCLEOD to deliver an envelope to COE
again.

       McCLEOD advised [ ] probably did not know what was going
on with [ ] and his deliveries to COE. He advised [ ] was very
honest. [ ]
area.                                                b6 -2,3

       McCLEOD advised he has more information regarding    b7C -2,3
corruption in Hillsborough County but needs time to correctly
delineate it. Agents gave McCLEOD a written list of the specific
points in detail to cover for each instance. He advised he would
write down the details of the incidents and send them to the FBI
Tampa Office, Public Corruption Squad.

       McCLEOD advised his motive for contacting Judge MENDEZ
after being incarcerated for four years was 1) McCLEOD believes
evidence in his case was tampered with and hurt his case; 2) He has

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of ____Steven A. McCLeod_____ .On 9/21/2004 ___ .Page ___4___
C

had time to reflect, read Hillsborough County cases in the law
library at the prison and does not want what has occurred in his
case (possible evidence tampering) to happen to someone else.

McCLEOD advised he is willing to take a polygraph
examination. He advised he will be in Tampa some time in November
for a post conviction matter. He will be housed in the
Hillsborough jail and is willing to speak to agents in the FBI
Tampa Office at that time.

McCLEOD then advised he had some information regarding
terrorism that may be useful. When he was arrested by the State
his computer was seized. He said the State should still have his
computer. McCLEOD thought Officer [          ]TPD, a task force
officer was the seizing officer. [       ]LNU did the forensic            b6 -4
analysis of his computer. On McCLEOD's computer is a notify list      b7C -4
which has the screen name of a man he was communicating with in
Yemen. Over a period of 4-5 months, around the end of August 2000,
before McCLEOD's arrest in 2000 he communicated with this man on a
constant basis. The man knew McCLEOD was a paralegal and the type
of work he did. He man asked a lot of detailed questions regarding
surveillance, how they are conducted, how to spot one, counter
surveillance, places in the United States such as malls, airports,
and court buildings. McCLEOD said he would find this man in the
MIRC chatroom, address www.mirc.com. This chat room was run out of
South Africa.

McLeod-4