UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN A. McLEOD,
Plaintiff,

vs.

Civil Action No.: 06-CV-00247(JDB)

U.S. DEPARTMENT OF JUSTICE, et al.
Defendants.

## AFFIDAVIT OF STEVEN A. McLEOD

I, Steven Alan McLeod, declare that I have personal knowledge that the following is a true and correct statement of facts:

1. At the time of my arrest on September 20th, 2000, I was the owner of a business in Tampa, Florida, which was a corporation called the National Legal Alliance. I have been a paralegal for several years and worked in the offices of several attorneys in the Hillsborough County, Florida area to draft legal documents, prepare and organize discovery documents and other materials, perform legal research, communicate with clients and perform various other administrative functions for attorneys. Specifically with the National Legal Alliance, I worked with attorneys nationwide and specialized in federal criminal defense. As part of my duties, I reviewed and organized discovery materials, wiretap affidavits and transcripts provided by federal law enforcement agencies, including the F.B.I., D.E.A., A.T.F. and other law enforcement agencies, concerning federal criminal prosecutions. I provided assistance to criminal defense attorneys in pre-trial preparation, trial support, preparation of appellate documents and briefs, and post-conviction motions and memorandums of law. During the course of my paralegal experience, I studied and recognized the patterns and techniques of federal law enforcement agencies, and specifically the Federal Bureau of Investigation, concerning interview and interrogation techniques, surveillance techniques, such as visual surveillance, aerial surveillance, use of tracking devices, thermal imaging devices and other patterns of

1                                             — Exhibit A —

investigation and law enforcement techniques. During the course of my services, I attended several trials and hearings held at the U.S. District Court, Samuel Gibbons Courthouse in Tampa, Florida.

2. On September 20th, 2000, two Tampa Police Department uniform officers knocked on the door of my residence at 8101 N. Dakota Avenue and informed me that they believed a felony had been committed at the residence and that a detective would be arriving shortly. The officers asked me to secure my dog and followed me through the kitchen into the door area leading to the backyard. As I went through the kitchen, I noticed a clothesline in a package sitting in the bay window over the kitchen sink and started to grab it to use to secure the dog but remembered a leash was attached to some shelving in the backyard and I secured the dog on the leash. I was subsequently arrested and taken into custody.

3. After being arrested, I lost my house, my business closed and I was financially unable to retain counsel to defend two (2) sexual battery charges and one (1) false imprisonment charge concerning an ex-girlfriend, who I allowed to become a tenant in my home.

4. I was appointed Asst. Public Defender Ursula Richardson, to represent me in Case No. 00-15913, 13th Jud. Circuit, In And For Hillsborough County, Florida.

5. During the pre-trial discovery proceedings, I was provided various documents, including a police report prepared by Tampa Police Department (TPD) Detective Scott Wolfe (Exh. #1), which stated that a search was performed after execution of a warrant and among other persons, Detective Robert Sheehan, who is a member of an FBI Task Force on Sex Crimes was present. Detective Wolfe's report stated my computer was taken by Det. Sheehan from the desk of my office and a rope was found in the desk drawer where the computer was located. I was also provided by my defense counsel, a

several exhibits and I later learned this letter and exhibits were forwarded to the F.B.I. Public Corruption Squad in Tampa, Florida for investigation of the allegations.

17. On February 4th, 2004, I appeared before the new judge for Hills. Co. Criminal Division H, Circuit Judge Wayne S. Timmerman, for the hearing on the Motion To Disqualify State Attorney's Office. Prior to the hearing, I noticed a man sitting in the third row, aisle seat of the courtroom gallery, wearing a yellowish/beige suit and I knew this man was an F.B.I. agent because he had previously testified in a trial against one of the clients I worked for in my business in the U.S. District Court in Tampa, Florida. During this hearing I conducted cross-examination of Suzanne Rossomondo and Ursula Richardson (Exh. #8, Pgs. 3-18) concerning the cell phone conversations and lunch conversations after receiving the copy of the request for investigation to Tampa Mayor Pam Iorio. Both Ms. Rossomondo and Ms. Richardson denied all of the allegations and Asst. State Attorney Michael Sinacore (Div. H Chief St. Atty.) represented the State. During the hearing, Judge Timmerman granted a Motion To Compel Exhibit Size Crime scene Photos and told me to submit an Order to him. (Exh. #8, Pg. 28) Judge Timmerman denied the Motion To Disqualify State Attorney's Office.

18. The following week I submitted the Order to Judge Timmerman concerning the exhibit size crime scene photos. I never could get Judge Timmerman to sign the order to get the exhibit size crime scene photos of the rope that was tampered with or a written order denying the Motion To Disqualify Crime Scene Photos so I could appeal them or get the photos I paid for from the Tampa Police Department. To date I have never received the exhibit size photos.

19. In being experienced and having knowledge of how cases are fixed and arranged by judges and employees of the Hills. Co. State Attorney's Office, I had a reasonable belief that either Asst. State Attorney Michael Sinacore and/or Ursula Richardson and/or Suzanne Rossomondo, went to Judge Timmerman and asked him not to execute the written orders to prevent me from appealing the Motion To

6

Disqualify State Attorney's Office or get the exhibit size crime scene photos, which showed detailed, close-up photos of the rope.

20. On March 23rd, 2004, I wrote a letter to Chief Judge Manuel Menendez, Thirteenth Judicial Circuit, Hillsborough County, Florida about my inability to get Judge Timmerman to execute the written orders from the February 4th, 2004 hearing. I didn't get a response to this letter so on April 30th, 2004, I sent another letter to Chief Judge Menendez threatening to document and expose all of the cases I had direct knowledge of being fixed. (Exh. #9). It was the April 30th, 2004 letter the two F.B.I. agents had when they came to visit me on September 21st, 2004.

21. At approximately 11:00 a.m. on September 21st, 2004, I was told to report to the medical/classification building by my work supervisor here at Hamilton C.I. (Main Unit). When I arrived I was taken to the office of Prison Inspector Cercy and a male and female were in the office and quickly flashed F.B.I. identification. During the interview, I outlined the details of five (5) cases that I made payments to the late Hills. Co. State Attorney Harry Coe for an attorney and a case that I had seen an attorney paid for. Due to the amount of information I had, the female agent provided me an outline (Exh. #10), they wanted me to follow in outlining the remaining cases or instances I knew about. At one point at the interview was closing, I was discussing with the agents about my problems with Judge Timmerman and the male agent made a comment about knowing all about it and it being taken care of. By the nature of the comment, I knew someone in the Hills. Co. State Attorney's Office was cooperating with the F.B.I. I asked the agents for their names and business cards and they became rude, which angered me, and refused to provide any identification.

22. After I left the interview with the F.B.I. agents I was upset. I got a complete copy of the investigation request to Hills. Co. Commission Chairman Tom Scott and the exhibits. I wrote the

7

F.B.I. office in Tampa and said I was providing them a complete copy of the misconduct in my case to make sure they had them but that I wouldn't provide them any further information about cases I knew about and if they needed any more information about cases being fixed by the State Attorney's Office, then ask Hills. Co. Asst. State Attorney Suzanne Rossomondo. I mailed this information to the F.B.I. on the next day, September 22nd, 2004.

23. Due to the comment made by the male F.B.I. agent to me on September 21st, 2004, I became concerned because Judge Wayne Timmerman was still the judge for my case and my Motion For Post-Conviction Relief pursuant to Rule 3.850, Fl.R.Crim.P. was still pending. I had filed a Petition For Writ Of Mandamus in Case No. 2D04-2410 in the Second District Court of Appeals to compel Judge Timmerman to execute the written orders from the February 4th, 2004 hearing and to take action on my Rule 3.850 motion. On September 23rd, 2004, I wrote Chief Judge Menendez a letter (Exh.#11) to express my concerns about Judge Timmerman being on my case and a target of an F.B.I. investigation.

24. In early October of 2004, the Florida Bar Journal, 2005 edition was received by Hamilton C.I. (Main Unit). I was working in the law library here and after the comment by the male F.B.I. agent on September 21st, 2004, I began looking up the names of the Asst. State Attorneys associated with my case (Richardson, Sinacore, Rossomondo) and learned Suzanne Rossomondo was no longer listed as a member of the Florida Bar. I wrote the Florida Bar and was told Ms. Rossomondo was no longer listed because she became deceased on February 19th, 2004, which was 15 days after my hearing, in which she was present.

25. I knew from my legal experience that Dr. Julie Martin had been a pathologist for the Medical Examiner's Office in Hillsborough County, Florida and routinely performed autopsys

8

So on October 20th, 2004, I wrote Dr. Martin a letter concerning the "death" of Ms. Rossomondo, including a Public Records Request, pursuant to Florida Statutes 119.07 for a copy of the autopsy report (Exh.#12). I received a response back from the Medical Examiner's Office in Leesburg, Florida (Exh.#13), which stated Dr. Martin had left the Medical Examiner's Office in February of 2004 but a check of the records from the Hills. County Medical Examiner's Office showed that no records existed for Ms. Rossomondo so it may not have been a Medical Examiner's case.

26. In early November of 2004, I received a letter from David Rowland, Court Counsel, Administrative Office of The Courts, in Hills. County, Florida, (Exh.#14) responding to my letter of September 23rd, 2004 to Chief Judge Menendez. In reviewing the letter from Mr. Rowland, I noticed that Robert O'Neill, Asst. U.S. Attorney was sent a copy of the letter and from my prior experience in the legal field, I knew Mr. O'Neill was the Chief Asst. U.S. Attorney in Tampa, Florida.

27. I contacted the Florida Bureau of Vital Statistics and obtained a copy of the Certificate of Death for Suzanne Lynn Rossomondo Kreis, (Exh.#15). In reviewing the death certificate, it stated Ms. Rossomondo "died" on February 14th, 2004, which was ten (10) days after my hearing in Tampa, Florida, when I questioned her during the Motion To Disqualify State Attorney's Office. The death certificate indicated Ms. Rossomondo "died" on February 14th, 2004 at St. Joseph's Hospital in Tampa, Florida and subsequently was cremated.

28. Due to my legal experience I knew the Florida Legislature had enacted Florida Statute 406.11(1)(c), which basically requires the Medical Examiner's Office to perform an autopsy in all cases when the decedent is cremated. This statute was enacted because when a person is cremated there is no body to exhume if the cause of death becomes a question so the Medical Examiner performs an

9

21st, 2004 here and after receiving the letter dated November 1st, 2004 (Exh.#14) from David Rowland, I wrote several letters to the F.B.I. office in Tampa, Florida and to Asst. U.S. Attorney Robert O'Neill in Tampa, Florida and I never received any responses.

32. On August 7th, 2005, I mailed Freedom Of Information Act requests directly to Robert O'Neill (Exh.#18) at the U.S. Attorney's Office in Tampa, Florida and directly to the F.B.I. field office (Exh.#19) in Tampa, Florida.

33. On January 17th, 2006, I signed the Freedom Of Information Act Action and mailed it on January 18th, 2006 at 8:30 a.m. by placing it in the hands of prison authorities. This litigation is currently pending in Case No. 06-CV-247(JDB) in the U.S. District Court in Washington, D.C.

34. In early April of 2006, I received a letter from Ann Shannon, an attorney for the F.B.I. field office in Jacksonville, Florida, (Exh.#20) concerning the FOIA litigation pending in Washington, D.C. Ms. Shannon provided copies of letters that I had sent to the F.B.I. Office in Jacksonville, Florida but failed to provide any information about the interview here by the F.B.I. agents from the Jacksonville, Florida, field office on September 21st, 2004.

35. On April 4th, 2006, I wrote letters to Ms. Shannon (Exh.#21) and Asst. U.S. Attorney Alan Burch (Exh.#22) in Washington, D.C., placing them on notice that I could prove the presence of the two F.B.I. agents here on September 21st, 2004 by use of the Visitor's Log in the Hamilton C.I. (Main Unit) Control Room and by deposing Prison Inspector's Corcy and Fontaine. I also placed Ms. Shannon and Mr. Burch on notice by the April 4th, 2006 letters that if I wasn't provided a copy of the report from the F.B.I. agents visit on September 21st, 2004 and had to prove the agents presence here, then I would seek sanctions against them in federal court.

11

36. I was subsequently provided a copy of an F.B.I. report dated September 22nd, 2004 from F.B.I. File No. 194A-TP-55469 which outlined the interview by the two F.B.I. agents with me on September 21st, 2004. In reviewing the F.B.I report, even with the redacted portions, the comments and discussion about Judge Wayne Timmerman had been omitted entirely from the report. (Exh.#23)

37. On May 1st, 2006, I wrote a letter to St. Joseph's Hospital, in Tampa, Florida about obtaining the medical records of Suzanne Lynn Rossomondo, which led to Ms. Rossomondo becoming deceased on February 14th, 2004. (Exh.#24). I subsequently received a response from the Custodian Medical Records of St. Joseph's Hospital in Tampa, Florida, refusing to release the records. (Exh.#25).

38. On April 18th, 2006, I wrote a letter to Chief Judge Manuel Menendez, in Tampa, Florida, to ask why the response on November 1st, 2004, (Exh.#14) had been sent to Asst. U.S. Attorney Robert O'Neill. I received a letter dated May 5th, 2006 from David A. Rowland, Court Counsel, (Exh.#25), which stated that my letter dated April 30th, 2004 (Exh.#9) had been sent to Asst. U.S. Attorney Robert O'Neill with a cover letter (Exh.#26), which discussed a phone conversation dated May 4th, 2004, and a copy of my letter dated September 23rd, 2004 was sent to Mr. O'Neill without a cover letter.

39. I have been provided a document titled, Declaration of Christina J. Griffiths, attached to a Motion To Dismiss And Motion For Summary Judgment and Ms. Griffiths is currently employed by the U.S. Attorney's Office in Tampa, Florida. In reviewing Ms. Griffiths Declaration, it is apparent she never contacted Asst. U.S. Attorney Robert O'Neill concerning her search for records.

40. Other than the documents attached to this Affidavit as Exhibit #2 and #23, at no time have I been provided any documents from the F.B.I. or U.S. Attorney's Office in Tampa

12

Florida.

41. In 1990, I filed a Petition For Writ Of Habeas Corpus, pursuant to Title 28 U.S.C. 2254 in Case No. 8:90-cv-568-T-17B, in the U.S. District Court in Tampa, Florida. Attached as exhibits to the Petition For Writ Of Habeas Corpus are documents which prove that Asst. U.S. Attorney James Muench, while employed with the Hills. Co. State Attorney's Office, knowingly and willingly withheld exculpatory evidence until the morning of my trial and knowingly and willingly suppressed evidence of perjury by the alleged victim in Case No. 87-16823, in the Thirteenth Judicial Circuit, In And For Hillsborough County, Florida.

## AFFIANT FURTHER SAYETH NOT.

### UNNOTARIZED OATH

I HEREBY certify, pursuant to Title 28 U.S.C. 1746, that the foregoing is true and correct under penalty of perjury.

DATED: 5/29/06

Steven A. McLeod, D.C.# 924820
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

13