April 1st, 2006

Ann Shannon, Esq.
Federal Bureau of Investigation
7820 Arlington Expressway, Suite 200
Jacksonville, FL 32211-7499

Steven A. McLeod, #197M
Hamilton C.I. (Main Unit)
10650 S.W. 46th St.
Jasper, FL 32052

NR - RTS
ACS - POS 197M
       FOR JK

OPEN

PROVIDED TO HAMILTON C.I. ON
___4/5/06___ FOR MAILING

RE: FOIA Litigation, McLeod v. DOJ, FBI
U.S.D.C. - 06-CV-0247

DOB 11/3/60
ee # 102811 [?]

Ms. Shannon,

    God's grace and peace to you in Jesus name! I am in receipt of your letter and information concerning the above-referenced matter and I appreciate your response. One item notably absent from your response was any reference to the interview done here on September 21st, 2004 with me by two (2) agents from your office. The reason the F.O.I.A. request was directed to the Tampa F.B.I. office is because your agents told me that the interview was being done for the Tampa office. The female agent had a letter that I had written in her possession, she took notes during the interview and she left me a handwritten instruction sheet on the information needed by the F.B.I. office in Tampa, which I attached as Exhibit #9 of the F.O.I.A. litigation.

    The agents had to complete some type of Contact/Interview Report for the September 21st, 2004 interview to send from your office to the Tampa office and I want it. If you fail to provide it and Mr. Burch executes a declaration of disclosure, then I'm going to file for a court order to obtain the logs from the Control Room here at Hamilton C.I. (Main Unit) for September 21st, 2004, have a deposition done of Prison Inspector Cercy, who escorted your agents and then move for sanctions in federal court against you and Mr. Burch. I also believe the interview was taped because there was a tape recorder on the desk.

    On a side note, I sent Agent Alexander McDonald in your office a letter dated March 20th, 2006 and I would like to know if it was received. Also, on the copy of my letter dated June 29th 2005, which you provided, at the bottom there appears to be an investigation number and you can consider this letter my F.O.I.A. request for the report of that investigation. Thank you and God bless,

ccs AUSA Alan Burch
    file

IN Christ,

— Exh #14

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription   09/22/2004

      STEVEN A. McCLEOD, white male, DOB 11/30/60, SSN 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, Florida Department of Corrections Inmate number A-924820, was interviewed at the Hamilton Correctional Institution, 10650 S.W.46th Street, Jasper, Florida 32052, telephone number (386) 792-5151, where he is serving a life sentence. McCLEOD was advised as to the identity of the interviewing agents and as to the nature of the interview. He then provided the following information:

      McCLEOD has completed 3 years of college. After being released from prison in 1991 he attended Paralegal Careers, a small private school and graduated in 1993 as a paralegal. He worked for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Tampa from 1994 to 1995 as a free lance paralegal, then started his own company called National Legal Alliance. The company worked with Federal Criminal Defense attorneys. McCLEOD reviewed the legal aspects of wire tap (Title III), surveillance, indictments and affidavits for defense attorneys.

      McCLEOD advised his father, HUGHEY McCLEOD was the Chief Deputy to the Clerk of Circuit Court, RICHARD AKE, in Hillsborough County. Therefore, McCLEOD either knew personally many of the judges or knew of many of the judges in Hillsborough County.

      McCLEOD stated he knew the late HARRY COE, former Circuit Court Judge in Hillsborough County. In 1991 COE became an elected State Attorney. He was ruthless in prosecution. In 2000 he came under investigation regarding worthless or forged checks and having guns in his office. COE had a $200,000/year income and often visited gambling websites on his laptop computer. McCLEOD said one day COE was found dead.

      McCLEOD advised the written statement he made in his letter to Judge MENENDEZ, "The last case I have personal knowledge of happened a month before my arrest," was the following:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had been out of jail for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In August 2000 Tampa Police Detectives on the vice squad, came to their house, knocked the front door and bedroom

b6 -3
b7C -3

Exhibit #145

Investigation on  9/21/2004  at  Jacksonville, Florida

File # 194A-TP-55469                         Date dictated  9/22/2004

by SA ▮▮▮▮▮▮▮▮      b6 -1
        SA               b7C -1

McLeod-1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of  Steven A. McCLeod              , On 9/21/2004 , Page   2
C

door down and arrested ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ McCLEOD advised he knew ▮▮▮▮ last name but could not recall it at the moment. He said in June 2002 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, sometime in August 2000, ▮▮▮▮ came to the N. Dakota address to discuss the proceedings with ▮▮▮▮. The met in the living room. McCLEOD and another man named ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ McCLEOD said he did not know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b6 -2,3
b7C -2,3

sentence. McCLEOD saw ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The next morning McCLEOD went to court with ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to wait a moment while he walked out into the hallway and met with the prosecutor. McCLEOD did not know the prosecutor's name. McCLEOD watched out the glass door window into the hallway and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the night before. The ▮▮▮▮ courtroom. ▮▮▮▮▮▮ jail sentence. McCLEOD had not seen or spoken to ▮▮▮▮ since his he ▮▮▮▮▮▮▮▮▮▮▮▮ McCLEOD said Judge ESPINOSA may have been the presiding judge.

b6 --3
b7C -3

McCLEOD described ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b6 -3
b7C -3

McCLEOD then advised another written statement he made in his letter to Judge MENENDEZ, "I personally made 4 payments for a defense lawyer to the late HARRY COE on East Street which runs behind the Annex," was the following:

The four instances occurred from ▮▮▮▮ and were all for HARRY COE. They occurred while McCLEOD ▮▮▮▮▮▮▮▮ LNU. McCLEOD would not give ▮▮▮▮ last name because he said ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b6 2,3
b7C 2,3

McLeod-2

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of  Steven A. McCLeod   b6 2,3           , On 9/21/2004 , Page 3
C                                              b7C 2,3

cases. [    ] defended a lot of subjects on drug charges. [    ]
[                                                          ] would have
McCLEOD file legal paperwork at the courthouse on a regular basis.
McCLEOD usually did it at the end of the day on his way home. A
man called [    ] always came to [    ] office with a lunch sac. One
day after [    ] left [    ] office, [    ] told McCLEOD he wanted to
talk to him. McCLEOD was going to the courthouse to drop off some
legal paper for [    ] on his way home. [    ] asked McCLEOD if he knew
who HARRY COE was. McCLEOD said he did. [    ] then asked McCLEOD to
drop off a manila envelope to COE at COE's car, which was parked on
East Street behind the Annex. The manila envelope was stapled at
the top and taped with thick binding tape at the top also. [    ]
told McCLEOD to take the envelope to COE before he went to the
Courthouse. The next morning [    ] thanked McCLEOD.

About a week to ten days later [    ] asked McCLEOD to do
the same thing again. Deliver a manila envelope to COE at his car.
The third time [    ] asked McCLEOD to deliver a manila envelope to
COE he didn't bind the envelope with tape. The flap was open a bit
so McCLEOD looked in the envelope and saw there were stacks of
money in it. So the fourth time [    ] asked McCLEOD to take a manila
envelope to COE, McCLEOD took an empty envelope with him. McCLEOD
went into the bathroom, tore open the envelope [    ] had given him,
took out $8,000 in cash, kept $1,000 and put the remaining $7,000
in the new envelope and sealed it. McCLEOD then gave COE the          b6 -3
envelope. [    ] did not say anything to McCLEOD about the delivery  b7C -3
However, [    ] never asked McCLEOD to deliver an envelope to COE
again.

McCLEOD advised [    ] probably did not know what was going
on with [    ] and his deliveries to COE. He advised [    ] was very
honest. [                                                              ]
area.                                                                  b6 -2,3

McCLEOD advised he has more information regarding           b7C -2,3
corruption in Hillsborough County but needs time to correctly
delineate it. Agents gave McCLEOD a written list of the specific
points in detail to cover for each instance. He advised he would
write down the details of the incidents and send them to the FBI
Tampa Office, Public Corruption Squad.

McCLEOD advised his motive for contacting Judge MENDEZ
after being incarcerated for four years was 1) McCLEOD believes
evidence in his case was tampered with and hurt his case; 2) He has

McLeod-3

FD-302a (Rev. 10-6-95)

194A-TP-55469

Continuation of FD-302 of  Steven A. McCLeod  , On 9/21/2004 , Page 4

had time to reflect, read Hillsborough County cases in the law library at the prison and does not want what has occurred in his case (possible evidence tampering) to happen to someone else.

    McCLEOD advised he is willing to take a polygraph examination. He advised he will be in Tampa some time in November for a post conviction matter. He will be housed in the Hillsborough jail and is willing to speak to agents in the FBI Tampa Office at that time.

    McCLEOD then advised he had some information regarding terrorism that may be useful. When he was arrested by the State his computer was seized. He said the State should still have his computer. McCLEOD thought Officer [        ] TPD, a task force officer was the seizing officer. [        ] LNU did the forensic analysis of his computer. On McCLEOD's computer is a notify list which has the screen name of a man he was communicating with in Yemen. Over a period of 4-5 months, around the end of August 2000, before McCLEOD's arrest in 2000 he communicated with this man on a constant basis. The man knew McCLEOD was a paralegal and the type of work he did. He man asked a lot of detailed questions regarding surveillance, how they are conducted, how to spot one, counter surveillance, places in the United States such as malls, airports, and court buildings. McCLEOD said he would find this man in the MIRC chatroom, address www.mirc.com. This chat room was run out of South Africa.

b6 -4
b7C -4

McLeod-4



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MAY 5, 2006

MR STEVEN A MCLEOD
**924820
MAIN UNIT
10650 SOUTHWEST 46TH STREET
JASPER, FL 32052

Subject: MCLEOD, STEVEN A

FOIPA No. 1029110- 001

Dear Requester:

    The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

4 **page(s)** were reviewed and 4 **page(s)** are being released.

☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐  referred to the OGA for review and direct response to you.

    ☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☐  You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐  The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).



Exhibit #1

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐ See additional information which follows.

Sincerely yours,

*[signature]*

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

Although the enclosed document does not appear to be responsive to your original Freedom of Information-Privacy Acts request, it is being released to you in connection with your letter dated April 4, 2006, addressed to Ann Shannon of our Jacksonville Field Office (JKFO). For your additional information, the file number written on your June 29, 2005, letter addressed to Agent Maricotti of our JKFO which you believe to be an investigation number is simply a control file which houses complaints such as your letter. There are no investigatory records maintained therein and only serial three of that file pertains to you.